UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SCOTT L. MONCRIEF,<br><br>              Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>              Defendant. | Case No. C11-5802-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Scott L. Moncrief seeks review of the denial of his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). He argues the Administrative Law Judge ("ALJ") erred by (1) improperly evaluating the medical evidence, Mr. Moncrief's credibility, and the lay evidence; (2) improperly assessing Mr. Moncrief's residual functional capacity; and (3) finding at step five there are jobs Mr. Moncrief could perform. Dkt. 10. For the reasons set forth below, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

              **I.     FACTUAL AND PROCEDURAL HISTORY**

Mr. Moncrief was born in 1977 and was 26 years old on the alleged disability onset date. Tr. 56, 338. He has a high school education and previously worked as a tow truck driver. Tr.

REPORT AND RECOMMENDATION - 1

407, 827-29. On August 19, 2004, he applied for SSI and DIB, alleging disability beginning August 24, 2003. Tr. 56, 338.

Mr. Moncrief's applications were denied initially and on reconsideration. Tr. 342-50. Mr. Moncrief requested a hearing which took place on May 15, 2007. Tr. 359-96. On September 24, 2007, the ALJ issued a decision finding Mr. Moncrief not disabled. Tr. 22-31. The Appeals Council denied Mr. Moncrief's request for review, Tr. 8-10, and he filed a complaint in the United States District for the Western District of Washington. On September 7, 2010, the Court issued an Order remanding for further administrative proceedings pursuant to the parties' stipulated motion. *Moncrief v. Astrue*, No. C09-5715RBL (W.D. Wash. 2010); Tr. 421.

On May 23, 2011, the ALJ held another hearing. Tr. 822-58. On June 2, 2011, the ALJ issued a decision finding Mr. Moncrief not disabled. Tr. 400-09. His administrative appeal of the ALJ's decision was denied by the Appeals Council, making the ALJ's ruling the final decision of the Commissioner. On September 30, 2011, Mr. Moncrief timely filed the present action challenging the Commissioner's decision. Dkt. No. 1.

## II. THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ made the following findings:

**Step one:** Mr. Moncrief had not engaged in substantial gainful activity since August 24, 2003, the alleged onset date. Tr. 402.

**Step two:** Mr. Moncrief had the following severe impairments: lumbar disc disease and strain including L3-4 and L4-5 disc bulge, and L5-S1 disc bulge with annular tear. *Id*.

**Step three:** These impairments did not meet or equal the requirements of a listed impairment.[2] Tr. 403.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

**Residual Functional Capacity:** Mr. Moncrief had the residual functional capacity to perform light work with some additional limitations: lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk, or sit for 6 hours in an 8-hour workday; push and pull is unlimited; frequently climb ramps and stairs or balance; occasionally crawl, crouch, kneel, stoop, or climb ladders, ropes, or scaffolds. He has no manipulative, communicative, environmental, or visual limitations. Tr. 403.

**Step four:** Mr. Moncrief could not perform his past relevant work. Tr. 407.

**Step five:** Mr. Moncrief could perform other jobs existing in the national economy and, therefore, was not disabled.

Tr. 407-08.

### III. DISCUSSION

### A. The ALJ's evaluation of the medical evidence

Mr. Moncrief argues that the ALJ incorrectly assessed the opinions of Vuthy Leng, M.D., Kim Wright, M.D., Carolyn A. Marquardt, M.D., Hyun Hong, M.D., Molly Fuentes, M.D., and Corrie Good, PT. Dkt. No. 10 at 3-13.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The ALJ may reject a physician's opinions "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Rather than merely stating his conclusions, the ALJ "must set forth his own interpretations and explain why they,

rather than the doctors', are correct." *Id*.

Less weight may be assigned to the opinions of other sources. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996). However, "[s]ince there is a requirement to consider all relevant evidence in an individual's case record," the ALJ's decision "should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." SSR 06-03p. "[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id*.

1.  **Molly Fuentes, M.D.**

On December 18, 2010, Dr. Fuentes examined Mr. Moncrief at the request of Disability Determination Services ("DDS"). Tr. 432-34. Dr. Fuentes observed that Mr. Moncrief displayed "significant pain behavior" during the examination, yet was able to exit his car smoothly, get on and off the exam table independently, take his shoes on and off without problem, and sit comfortably in his car, the waiting room, and the examination room. Tr. 404, 433-34. She noted Mr. Moncrief could perform toe and heel walking, and his gait, while antalgic, was stable and efficient. Tr. 404, 434. Dr. Fuentes diagnosed Mr. Moncrief with low lumbar back pain with radicular-type left leg pain, but noted that a more precise diagnosis was restricted by his pain inhibition and his overall poor effort during the exam. Tr. 404, 435.

Dr. Fuentes opined that Mr. Moncrief could stand or walk 6-8 hours in a workday, sit 6-8 hours in a workday, lift 20 pounds occasionally and 10 pounds frequently. Tr. 436. Dr. Fuentes also completed a medical-source statement in which she opined that Mr. Moncrief was limited to

sitting, standing, or walking for 30 minutes at one time without interruption, and he "should change positions frequently to prevent discomfort and biomechanical stress." Tr. 439.

The ALJ gave great weight to Dr. Fuentes's opinion, noting that her assessment was based on direct examination and was consistent with the evidence of record and with the objective MRI findings in the record. Tr. 406. Mr. Moncrief argues that although the ALJ gave great weight to Dr. Fuentes's opinions, he failed to include all of the limitations described by Dr. Fuentes in the residual functional capacity ("RFC") assessment. He contends that the ALJ failed to mention Dr. Fuentes's opinion that he was limited to sitting, standing, and walking for no more than 30 minutes at one time, and that he needed to change positions frequently. The Commissioner concedes that the ALJ should have included these restrictions in the RFC, and that the RFC was erroneous as a result. However, the Commissioner contends this error was harmless because the ALJ's second and third hypothetical to the vocational expert ("VE") accounted for the restrictions described by Dr. Fuentes.

In the second hypothetical, the ALJ asked the VE to consider what type of work Mr. Moncrief could perform if he could lift and/or carry 10 pounds maximum, stand and/or walk up to 2 hours in a workday, and sit up to 6 hours in a workday, but sit no more than 2 hours at one time. Tr. 851-52. Even though the hypothetical included more restrictive limitations than the RFC, the VE responded that Mr. Moncrief could perform sedentary work as a dispatcher, telephone solicitor, and table worker.[3] Tr. 852-53. The ALJ then offered a third hypothetical which included all of the restrictions in the second hypothetical and also permitted the option to sit or stand. Tr. 854. The VE testified that Mr. Moncrief could perform the same sedentary jobs

---

[3] Although the hearing transcript states "cable worker," the Commissioner points out this appears to be a transcription error as the Dictionary of Occupational Titles ("DOT") code offered by the VE, DOT 739.687-182, was for a "table worker."

REPORT AND RECOMMENDATION - 5

1  as dispatcher, telephone solicitor, and table worker. *Id.* Although the third hypothetical did not

2  include a need to change positions frequently, the VE's testimony indicates that he interpreted

3  the hypothetical question to include the option to sit or stand at will, thus allowing the individual

4  to change positions whenever he wanted. Because the VE's job findings incorporated all of the

5  limitations assessed by Dr. Fuentes, the ALJ's error in failing to include these limitations in the

6  RFC assessment was harmless. *See Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th

7  Cir. 2006) (recognizing application of harmless error in Social Security context where a "mistake

8  was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

### 2. Vuthy Leng, M.D.

According to the record, Dr. Leng began treating Mr. Moncrief for low back pain on December 4, 2006. Tr. 718. On May 11, 2011, Dr. Leng completed a residual functional capacity form in which he opined that Mr. Moncrief was limited to sitting for 30 minutes at one time, and standing or walking for 15 minutes at one time. Tr. 819-21. He also opined Mr. Moncrief could sit for a total of 4 hours in a workday, stand or walk for a total of 2 hours in a workday, and lift or carry a maximum of 10 pounds for a total of 2 hours in a workday. Tr. 819. He indicated that Mr. Moncrief's ability to reach, handle, finger, and feel was limited to 2 hours in a workday. Tr. 820. Dr. Leng stated, "Mr. Moncrief's injuries to his neck, mid-back, low back and L leg prevent him from sitting or standing for long periods of time. Bending & twisting also increases pain." Tr. 821.

Because Dr. Leng's opinions conflicted with Dr. Fuentes's opinions, the ALJ was required to give "specific, legitimate reasons for disregarding [Dr. Leng's] opinions . . . ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The ALJ gave little weight to Dr. Leng's opinion because it was "not supported by objective medical evidence and

was inconsistent with the findings of consultative examiner, Dr. Fuentes." Tr. 406. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, a review of the medical evidence does not support the ALJ's reasons for rejecting Dr. Leng's opinion.

The ALJ noted that treatment records from Dr. Leng included findings of left leg muscle atrophy, but stated that "this particular finding was not noted by Dr. Fuentes and is found nowhere else in the record." Tr. 406. As Mr. Moncrief points out, however, Dr. Leng repeatedly noted muscle atrophy in the left lower limb in treatment notes between December 2006 and April 2011.[4] Although Dr. Fuentes did not make this finding, she did note that left lower extremity strength was 4+/5 (pain and effort-inhibited). Tr. 435. The fact that Dr. Fuentes did not note left leg muscle atrophy does not negate Dr. Leng's findings.

Neither is there support in the record for the ALJ's conclusion that Dr. Leng's opinion is not supported by any of the magnetic resonance imaging ("MRI") exams performed during the relevant time period. Tr. 406-07. The ALJ noted that an MRI performed on August 29, 2003, five days after the alleged onset date, showed mild facet degenerative changes, but no evidence of fracture, misalignment, ligamentous injury, or spinal stenosis. Tr. 405, 247. Another MRI on May 6, 2005, showed mild broad-based disc bulges at the L3-4 and L4-5 levels that just contacted the exiting respective nerve roots, and a mild broad-based disc bulge at the L5-6 with questionable clinical significance. Tr. 405, 326-27.

An MRI on December 6, 2005, showed a small disc protrusion at L5-S1, all other levels

---

[4] Tr. 555, 557, 559, 561, 563, 565, 568, 570, 572, 575, 577, 580, 583, 587, 590, 593, 596, 598, 601, 604, 606, 609, 612, 615, 618, 621, 624, 627, 630, 633, 636, 639, 642, 645, 648, 651, 654, 656, 659, 662, 665, 668, 671, 674, 677, 680, 683, 686, 689, 692, 695, 698, 702, 705, 707, 710, 712, 715, 717, 719.

were normal. Tr. 405, 538. The ALJ noted that Mr. Moncrief's neurosurgeon, Kim Wright, M.D., described the results as "extremely subtle." Tr. 405, 520. Although Dr. Wright noted that the radiographic findings were "extremely subtle," he nevertheless found that they "demonstrated the left L5 nerve root appeared to be compressed between the disc and the medical facet at L5, resulting in lateral recess narrowing." Tr. 353, 520. Accordingly, he recommended that "Mr. Moncrief obtain an L5 nerve root block injection given that, if he were to enjoy significant improvement with the injection, [he] might be inclined to recommend a surgical decompression of the L5 nerve root." Tr. 353-54. On January 25, 2006, Mr. Moncrief obtained the L5 nerve root block, and reported at least four hours of almost complete pain relief following the injection. Tr. 354. On September 13, 2006, Dr. Wright performed a left L4-L5 laminotomy, medial facectomy, and foraminotomy. Tr. 354, 542. Mr. Moncrief subsequently reported some numbness and discomfort in his left leg, but that his pain was improved. Tr. 354. Dr. Wright believed that further surgical intervention was not required, and recommended that Mr. Moncrief enroll in a pain management program to mange his unresolved back and leg pain. *Id*. The Court finds the ALJ's statement about Dr. Wright's treatment note misleading, as the ALJ ignores the fact that Dr. Wright found the MRI showed evidence of nerve root compression.

In February 2007, an MRI showed minimal disc displacement, no stenosis, and no facet disease at L3-L4; and remote endplate herniation, minimal disc bulge, moderate facet arthropathy, and no stenosis at L4-L5. Tr. 405, 543. The radiologist noted, "No findings to explain the patient's left leg pain." Tr. 543. An MRI in January 2010 showed evidence of a mild disc bulge at L4-L5, L5-L6, and L6-S1, soft tissue density attenuation of the left L6 nerve root sleeve, and attenuation of the right S1 nerve root sleeve. Tr. 405, 818.

The ALJ's assertion that Dr. Leng's opinion is not supported by objective medical

evidence is erroneous and fails to reach the level of specificity required for rejecting an opinion of a treating physician. *See Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by substantial objective findings or are contrary to the preponderant conclusions mandated by objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than merely offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Contrary to the ALJ's conclusion, the medical evidence shows a significant period of time where Mr. Moncrief was treated with spinal injections, a TENS unit, and prescription pain medication. In addition, an MRI in 2006 showed evidence of nerve root compression and he underwent a left L4-5 laminotomy, medial facectomy, and foraminotomy to improve his pain symptoms. This evidence is objective and supports Dr. Leng's opinion. While the ALJ may not agree with Dr. Leng's opinion, conclusory reasons will not justify the ALJ's rejection of a medical opinion. *Regennitter v. Comm'r of the Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999). In sum, the ALJ committed legal error by failing to articulate specific, legitimate reasons based on substantial evidence for rejecting the treating source opinion of Dr. Leng. Remand is warranted to reconsider Dr. Leng's opinion.

**3.     Kim Wright, M.D.**

Dr. Wright diagnosed Mr. Moncrief with lumbar spondylosis, lateral recess stenosis, and radiculopathy. Tr. 542. As indicated above, he performed a left L4-L5 laminotomy, medial facectomy, and foraminotomy on September 13, 2006. Tr. 354, 542. Mr. Moncrief subsequently reported some residual left leg numbness and discomfort, but that his pain had improved. Tr. 354. Dr. Wright believed that further surgical intervention was not required, and recommended that Mr. Moncrief enroll in a pain management program to mange his residual back and leg pain.

1  *Id.* On September 13, 2007, Dr. Wright opined that "although the 9/13/06 surgery improved the
2  L5 nerve root decompression condition, Mr. Moncrief will likely continue to have some degree
3  of back and leg pain on a permanent basis." Tr. 355.

4  Mr. Moncrief contends that the ALJ erred by failing to consider Dr. Wright's clinical
5  findings requiring reversal. Dkt. 10 at 6-9. While the ALJ must "make fairly detailed findings in
6  support of administrative decisions to permit courts to review those decisions intelligently," the
7  ALJ "need not discuss all evidence presented." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th
8  Cir. 1984). Rather, the ALJ need only explain why "'significant probative evidence has been
9  rejected.'" *Id*. (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3rd Cir. 1981)).

10  As indicated above, the Court agrees that the ALJ's statement about Dr. Wright's
11  treatment note was misleading, and did not support the ALJ's conclusion that objective medical
12  evidence does not support Dr. Leng's opinion. However, Mr. Moncrief fails to explain how the
13  ALJ's failure to discuss Dr. Wright's findings rendered the ALJ's evaluation deficient. Contrary
14  to Mr. Moncrief's assertion, the mere fact that Dr. Wright performed back surgery does not by
15  itself establish disability. Dr. Wright's treatment notes were consistent with the ALJ's RFC
16  assessment and contained no functional limitations that would have altered the hypotheticals to
17  the vocational expert. Accordingly, the Court declines to find the ALJ erred by failing to discuss
18  Dr. Wright's findings.

19  **4.     Carolyn Marquardt, M.D.**

20  On November 29, 2004, Dr. Marquardt diagnosed Mr. Moncrief with an L5-S1 disc
21  bulge with an annular fissure, some sacroiliac joint dysfunction, left iliotibial band syndrome,
22  mild thoracic strain, cervical strain, chronic pain, and reactive depression and anxiety. Tr. 307.
23  She opined that there was no surgical fix and further injections would not help, and referred him

to the University of Washington Pain Program. *Id*. On January 16, 2008, Dr. Marquardt diagnosed Mr. Moncrief with history of lumbar laminectomy and chronic low back pain and lumbar radicular symptoms. Tr. 499. She wrote, "Work status – the patient remains disabled." Tr. 500. She opined that "Scott appears to have chronic neuropathic pain," and that "due to the number of years that he has had this problem and his lack of success with multiple procedures, including injections, surgery and therapy, his prognosis for much in the way of improvement is guarded." *Id*.

The ALJ noted that Dr. Marquardt opined that Mr. Moncrief's back issues would not be resolved with surgery, but did not address her opinion that he "remains disabled." Tr. 405. Mr. Moncrief argues that the ALJ erred by failing to address Dr. Marquardt's opinion that he "remains disabled," and he "appears to have chronic neuropathic pain." Dkt. 10 at 9.

Although a treating physician's opinion is not conclusive as to the patient's physical condition or disability, 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1), the ALJ must give specific and legitimate reasons for rejecting it. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 n.10 (9th Cir. 2007). Here, the ALJ only briefly mentioned Dr. Marquardt, and did not address her opinion that Mr. Moncrief was disabled. It was legal error for the ALJ to ignore Dr. Marquardt's opinion that Mr. Moncrief was disabled without providing specific and legitimate reasons for doing so. *See Lester*, 81 F.3d at 830. On remand, the ALJ must reevaluate Dr. Marquardt's opinion.

**5.  Hyun Hong, M.D.**

Dr. Hong provided pain management care to Mr. Moncrief. Tr. 721-45. The ALJ noted that Mr. Moncrief received nerve block injections, but did not mention Dr. Hong by name. Tr. 403. Mr. Moncrief argues the ALJ "fails to acknowledge that Moncrief's need for this treatment is consistent with his testimony about his pain and functional limitations." Dkt. 10 at 10.

REPORT AND RECOMMENDATION - 11

Although Mr. Moncrief argues that the evidence supports his claims, it is not the function of this Court to consider whether there is substantial evidence to support his theory of the case, but, rather, whether substantial evidence supports the ALJ's findings. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995) ("The scope of our review, however, is limited: we may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error."). Moreover, the ALJ is not required to discuss every piece of evidence. *See Vincent*, 739 F.2d at 1394 (citing *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981)). The Commissioner need only explain why "significant probative evidence has been rejected." *Cotter*, 642 F.2d at 706. Here, the ALJ did not reject the evidence cited by Mr. Moncrief, but noted that his treatment included nerve block injections. Tr. 403. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). While it is perhaps possible to construe the medical evidence as urged by Mr. Moncrief, it is not possible to conclude that his interpretation is the only rational interpretation. The ALJ did not err in his treatment of Dr. Hong's records.

### 6. Corie M. Good, PT

Mr. Moncrief also argues that the ALJ erred by failing "to mention the physical therapy notes from Ms. Good." Dkt. 10 at 13. Specifically, Mr. Moncrief contends that the ALJ erred when he failed to mention Ms. Good found he had abnormal posture, abnormal gait, decreased lumbar active range of motion with pain, decreased hip strength with pain, muscle guarding and spasms, and only fairly tolerated physical therapy. *Id.* at 12-13.

Mr. Moncrief fails to show that the ALJ erred in failing to mention Ms. Good's records. As explained above, the ALJ need only explain why "significant probative evidence has been

rejected" and need not discuss all evidence. While Mr. Good's statements described findings, she did not opine that the conditions noted rendered Mr. Moncrief unable to perform sedentary work. Accordingly, the ALJ did not err in failing to discuss Ms. Good's therapy records.

   7.    **Terry A. Moon, OTR/L**

On February 5, 2004, occupational therapist Terry A. Moon, OTR/L, assessed Mr. Moncrief's capacity to perform work as a tow truck operator, fast food worker, and cashier II. Tr. 250-266. She opined Mr. Moncrief was "able to perform the physical demands of the Sedentary to Light category of work according to the U.S. Department of Labor Standards on a full-time basis." Tr. 250. She also indicated Mr. Moncrief could sit for 30-45 minutes at a time for 5-6 hours in an 8-hour workday with frequent changes of position; stand for 15-30 minutes at a time for 3-4 hours in an 8-hour workday with frequent changes of position; and walk 15-20 minutes for 3-4 hours in an 8-hour workday with frequent changes of position. Tr. 253. Cumulatively, Mr. Moncrief could sit, stand, and walk for 8 hours in an 8-hour workday, and be on his feet for 5 hours in an 8-hour workday. *Id*.

The ALJ did not discuss Ms. Moon's evaluation, and Mr. Moncrief argues that this failure was erroneous. The Commissioner concedes that the ALJ should have discussed Ms. Moon's evaluation, but contends this error was harmless because the ALJ's third hypothetical to VE accounted for the restrictions described by Ms. Moon. As indicated above, the ALJ's third hypothetical limited Mr. Moncrief to standing or walking for no more than 2 hours in an 8-hour workday, sitting for a total of 6 hours in an 8-hour workday, and sitting no more than 2 hours at one time with a sit/stand option. Tr. 408, 851-53.

In reply, Mr. Moncrief argues that the ALJ's third hypothetical was not consistent with Ms. Moon's opinion because it did not allow for his need "to frequently change positions

REPORT AND RECOMMENDATION - 13

between sitting, standing, and walking." Dkt. 14 at 8. However, Ms. Moon's evaluation did not specify a need to frequently change positions between sitting, standing, and walking. Rather, she found that Mr. Moncrief could sit, stand, or walk for a total of 8 hours in an 8-hour workday, with the individual sitting, standing, and walking limitations identified above.

The Court agrees with the Commissioner that the ALJ's third hypothetical to the VE included all of the limitations assessed by Ms. Moon, and the ALJ relied upon the jobs identified by the VE in response to that hypothetical in finding Mr. Moncrief not disabled. Because the ALJ's failure to discuss Ms. Moon's evaluation was inconsequential to the ALJ's ultimate nondisability determination, this error was harmless. *See Stout*, 454 F.3d at 1055 (recognizing application of harmless error in Social Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

### 8. Other Medical Evidence

Mr. Moncrief also challenges the ALJ's evaluation of Joseph F. Jasper, M.D., Michael Schlitt, M.D., William G. Dredge, D.C., Cheryl A. Hayes, D.O., Michael Tollan, PT, and Kimberly Drusilla Blake, Ph.D. Dkt. 10 at 13-15. He advances this argument by cataloging various items from the medical record that were not mentioned by the ALJ. The Commissioner argues that Mr. Moncrief fails to present any substantive error in the ALJ's evaluation of the medical evidence, failing to explain why any of the omissions are significant, probative, or resulted in harmful error. Dkt. 13 at 14-15. The Court agrees with the Commissioner.

The ALJ need not discuss all evidence presented. Rather, the ALJ's responsibility is to "explain why 'significant probative evidence has been rejected.'" *Vincent*, 739 F.3d at 1394-95. Fundamentally, Mr. Moncrief asks for a different weighing of the evidence other than that conducted by the ALJ. However, as indicated above, when the evidence is susceptible to more

than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. While it is perhaps possible to construe the medical evidence as urged by Mr. Moncrief, it is not possible to conclude that his interpretation is the only rational interpretation. Mr. Moncrief has not established error in the ALJ's consideration of this medical evidence.

**B.     The ALJ's evaluation of Mr. Moncrief's credibility**

Mr. Moncrief also argues that the ALJ improperly evaluated his testimony about his symptoms and limitations. Dkt. 10 at 16-19. According to the Commissioner's regulations, a determination of whether to accept a claimant's subjective symptom testimony requires a two step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284.

In this case, there was no evidence that Mr. Moncrief was malingering. Consequently, the ALJ was required to provide clear and convincing reasons to reject his testimony. Because this case should be remanded for reconsideration of the medical evidence, and the ALJ's credibility determination was inextricably linked with the ALJ's assessment of the medical evidence, Mr. Moncrief's credibility should also be revisited on remand. After reevaluating the

medical evidence, the ALJ will be in a better position to assess Mr. Moncrief's credibility.

**C.     The ALJ's evaluation of the lay witness testimony**

   **1.     Cathleen Brooks**

Mr. Moncrief contends the ALJ erred in rejecting the testimony of his mother, Cathleen Brooks. Dkt. 10 at 20-21. In order to determine whether a claimant is disabled, an ALJ may consider lay witness sources, such as testimony by parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Lay witness testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence that cannot be disregarded without comment. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). To discount lay witness testimony, the ALJ must "provide reasons germane to each witness." *Id*.

Ms. Brooks completed a third-party function report on January 18, 2005. Tr. 113-21. She opined that Mr. Moncrief has severe lower back pain when he lifts, climbs stairs, bends, stands, kneels, walks, squats, and reaches. Tr. 118. The ALJ gave Ms. Brooks's report little weight, finding her assertions regarding Mr. Moncrief's functional limitations were "not supported by the objective evidence, which indicates that he is less limited than Ms. Brooks claims." Tr. 407. Inconsistency with the record is a germane reason for discrediting lay witness testimony. *See Bayliss*, 427 F.3d at 1218 (noting that inconsistency with the medical record is a germane reason for discrediting the testimony of a lay witness). However, the Court has determined that the ALJ failed to review the medical evidence properly. Therefore, the lay evidence from Ms. Brooks's should be reevaluated on remand.

**D.     The ALJ's RFC and step five determinations**

Mr. Moncrief contends the ALJ failed to properly assess his RFC and erred at step five by posing hypothetical questions to the VE that did not include all of his limitations. Dkt. 10 at

REPORT AND RECOMMENDATION - 16

21-24.  The Court need not resolve these contentions as the ALJ erred in his evaluating the opinions of Dr. Leng and Dr. Marquedt and must necessarily reevaluate on remand what impact, if any, this has on Mr. Moncrief's RFC, and any hypothetical question that is posed to a VE at step five.

**E.     This matter should be remanded for further proceedings**

The Court has discretion to remand for further proceedings or to award benefits.  *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77.  Here, there are outstanding issues that must be resolved.  Therefore, remand is appropriate in order to allow the Commissioner the opportunity to properly consider the medical evidence as a whole and to incorporate the properly considered medical evidence into the consideration of Mr. Moncrief's credibility and residual functional capacity.

### IV.     CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings.  On remand, the ALJ should reevaluate the opinions of Dr. Leng and Dr. Marquedt, develop the medical record as necessary, reevaluate Mr. Moncrief's testimony, and reevaluate Mr. Moncrief's RFC and proceed to steps four and five as necessary.

A proposed order accompanies this Report and Recommendation.  Objections, if any, to

this Report and Recommendation must be filed and served no later than **July 2, 2012.** If no objections are filed, the matter will be ready for the Court's consideration on **July 6, 2012**. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages. The failure to timely object may affect the right to appeal.

DATED this 18th day of June, 2012.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18